**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff,

v.

**MID–AMERICAN SPECIALTIES, INC., Defendant.**

**Case No. 2:09–cv–02203–JPM–cgc.**

United States District Court, W.D. Tennessee, Western Division.

March 24, 2011.

894

Deidre Smith, Kelley R. Thomas, Equal Employment Opportunity Commission, Memphis, TN, Faye A. Williams, Kenneth P. Anderson, Joseph M. Crout, Joseph M. Crout, Attorney at Law, Germantown, TN, for Plaintiff.

Elijah Noel, Jr., Michael F. Rafferty, Harris Shelton Dunlap Cobb & Ryder, Memphis, TN, Jonathan E. Scharff, Laura S. Martin, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION

JON P. McCALLA, Chief Judge.

Before the Court is Plaintiff Equal Employment Opportunity Commission's ("EEOC") Motion for Permanent Injunction (Docket Entry ("D.E.") 94), filed March 4, 2011. Defendant Mid–American Specialties, Inc. ("Mid–American") responded in opposition on March 11, 2011. (D.E. 96.) For the following reasons, the EEOC's motion is GRANTED IN PART and DENIED IN PART.

## I. Background

This case arises from the sexual harassment of Jennifer Looney ("Looney"), Karen Wingate ("Wingate"), and Sandra Williamson ("Williamson") by male supervisors at Mid–American, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (*See* Compl. (D.E. 1) ¶ 7.) A jury trial was held in this case from February 22 to March 2, 2011. The jury found, *inter alia,* that Looney, Wingate, and Williamson were subjected to a hostile work environment based on their sex. (Jury Verdict Form (D.E. 90).) It also found that Mid–American unlawfully retaliated against Wingate and Williamson for reporting the harassment. (*Id.*) The jury awarded $350,000.00 in compensatory damages, $54,967.59 in back pay, and $1,100,000.00 in punitive damages. (*Id.*; Punitive Damages Verdict Form (D.E. 91).) The EEOC now moves for injunctive relief. (Pl. EEOC's Mem. in Supp. of Mot. for Permanent Inj. ("Pl.'s Mem.") (D.E. 94–1) 2.)

## II. Standard of Review

Forty-two U.S.C. § 2000e–5(g)(1) provides that "the [trial] court may enjoin the respondent from engaging in ... unlawful employment practice[s], and order such affirmative action as may be appropriate, ... or *any other equitable relief as the court deems appropriate.*" 42 U.S.C. § 2000e–5(g)(1) (emphasis added). The district court has broad discretion in granting post-trial injunctive relief in Title VII cases. *EEOC v. Frank's Nursery & Crafts, Inc.,* 177 F.3d 448, 467 (6th Cir. 1999); *see also Spencer v. Gen. Elec. Co.,* 894 F.2d 651, 660 (4th Cir.1990) ("[A] district court must ... exercise its discretion ... to ensure that discrimination does not recur."). Permanent injunctive relief is available even where the EEOC has not alleged a pattern or policy of discrimination. *Frank's Nursery,* at 468. Once an employer has been held liable under Title VII, it is the employer's burden to offer evidence that the unlawful conduct will not

recur. *Spencer,* 894 F.2d at 660 n. 13. The ultimate burden of showing that injunctive relief is appropriate, however, lies with the EEOC. *Id.; see also Prentice v. Am. Standard, Inc.,* No. 91–6126, 972 F.2d 348, 1992 WL 172662, at *2 (6th Cir. July 23, 1992) (same).

### III. Analysis

■ Mid–American generally opposes the EEOC's request for injunctive relief and also objects to certain paragraphs of the proposed injunction.[1] (Def.'s Resp. to Pl.'s Mot. for Permanent Injunction ("Def.'s Resp.") (D.E. 96).) Mid–American asserts that it has already undertaken a "bona fide committed effort" to eliminate sexual harassment. (*Id.* at 5) (*quoting Spencer,* 894 F.2d at 660.) Having taken such steps, Mid–American argues that injunctive relief is unnecessary. The Court addresses the EEOC's requests (and Mid–American's objections) seriatim.

### a. Injunction (Paragraphs One and Two)

The EEOC seeks the following injunctive language:

1. Defendant and its managers and supervisory employees, agents, officers, successors and assigns are enjoined from engaging in any employment practice which discriminates against employees because of their sex. This includes subjecting female employees to a hostile work environment based on sexual harassment.

2. Defendant and its managers and supervisory employees, agents, officers, successors and assigns are enjoined from engaging in retaliation against any individual for engaging in protected activity under Title VII. Defendant and its managers and supervisory employees, agents, officers, successors and assigns are further enjoined from taking any retaliatory action against any individual for participating in this matter in any way or giving testimony in this matter. (Pl.'s Mem. 3–4.)

Mid–American argues that the above paragraphs do nothing more than command Mid–American to follow the law. It contends that such "obey the law" language is insufficiently specific to form part of any injunctive relief. (Def.'s Resp. 6.) The Court agrees, for the reasons discussed below.

■ Federal Rule of Civil Procedure 65(d) provides that an order granting injunctive relief must "state its terms specifically" and "describe in reasonable detail ... the act or acts restrained or required." Fed.R.Civ.P. 65(d)(1)(B)-(C). Title VII prohibits, *inter alia,* discrimination on the basis of sex, a hostile work environment based on sexual harassment, and retaliation for engaging in Title VII-protected activity. Paragraphs one and two of the EEOC's proposed injunction essentially order Mid–American to comply with Title

---

1. Mid–American offers specific objections to: (1) the first and second paragraphs of the proposed injunction; (2) the fourth paragraph of the proposed injunction; and (3) the ninth paragraph of the proposed injunction. (Def.'s Resp. 5–10.) The Court overrules Mid–American's global objection to injunctive relief. The abundant evidence of past harassment and retaliation offered by the EEOC at trial, coupled with the possibility of recurrence (because both supervisors accused of harassment still work for Mid–American), lead the Court to conclude that injunctive relief is appropriate. *See Hylind v. Xerox Corp.,* No. PJM 03–116, 2010 WL 3746113, at *7 (D.Md. Sept. 17, 2010) (explaining that injunctive relief in the Title VII context is not warranted only in those instances where discrimination "appears to represent an isolated incident") (*citing EEOC v. Fin. Assurance, Inc.,* 624 F.Supp. 686, 695 (W.D.Mo.1985)).

VII. Such provisions are overbroad. *See EEOC v. Wooster Brush Co. Employees Relief Ass'n,* 727 F.2d 566, 576 (6th Cir. 1984) ("Such 'obey the law' injunctions cannot be sustained."); *see also United States v. Matusoff Rental Co.,* 494 F.Supp.2d 740, 757 (S.D.Ohio 2007) (concluding, in an FHA case, that "obey the law" injunctions violate Rule 65(d)). Accordingly, the EEOC's requests for paragraphs one and two are DENIED.

### b. Distribution of Policies and Procedures Prohibiting Retaliation (Paragraph Three)

The EEOC seeks the following injunctive language:

3. Within fourteen days after the entry of Judgment for Injunctive [R]elief, Defendant must send a letter to all of its employees at [Mid–American], advising them of the verdict against Defendant in this case on the claims of sexual harassment and retaliation, enclosing a copy of Defendant's policy prohibiting sexual harassment and retaliation against individuals who engage in protected activity under Title VII, stating that Defendant will not tolerate sexual harassment or retaliation[,] and that Defendant will take appropriate disciplinary action against any manager, supervisor or employee who engages in sexual harassment or retaliation. The letter must be printed on Defendant's letterhead and must be signed by Defendant's Chief Executive Officer. A copy of the letter is attached hereto as Exhibit "A."

(Pl.'s Mem. 4.)

Mid–American offers no specific objections to the above paragraph. The Court finds that the language is sufficiently specific under Rule 65(d). Accordingly, the Court GRANTS the EEOC's request for paragraph three.

### c. Modification of Policies and Procedures (Paragraphs Four Through Eight)

The EEOC seeks the following injunctive language:

4. Defendant will designate a specific corporate management representative to receive and investigate reports and complaints of sexual harassment. This individual will report directly to Defendant's Chief Executive Officer and must be trained on best practices for conducting sexual harassment investigations. This individual and Defendant must:

A. Conduct an investigation of all reports of sexual harassment within one week of receipt of the allegation of sexual harassment by Defendant.

B. The investigation will include in-person interviews of all witnesses, complainant and witness written statements describing allegations, and identification of all parties involved in the investigation.

C. The designated corporate representative for receiving complaints will keep a contemporaneous log of all calls, details of all investigations, including all interview notes, and information regarding [the] resolution of an investigation. If a report is not investigated, a written record must be made to justify the failure to investigate.

D. Defendant will hire an independent third party to operate and manage a toll-free hotline number (i.e. 1–800 number) for receiving employee complaints as an alternative mechanism for the reporting of sexual harassment complaints.

E. Reports of sexual harassment may be made anonymously on the toll-free hotline. If an anonymous report is made by an employee to the toll-free hotline, the third party that operates the

toll-free hotline must maintain records of all complaints received and submitted to Defendant.

F. This designated corporate representative will also investigate immediately any reports of retaliation against an employee for making a report of sexual harassment.

G. Defendant will maintain all records of any sexual harassment complaint or investigation for a minimum of 36 months.

5. Defendant will include in its harassment policy a warning that harassment of those reporting or complaining of sexual harassment is grounds for discipline up to and including termination. Any report of retaliation must be investigated in accordance with Paragraph 4 and may also be reported through the hotline procedure outlined within Paragraph 4.

6. Defendant will include in its sexual harassment policy the requirement for managers to keep confidential any reports of harassment. The Defendant must take steps to ensure there is no retaliation against anyone [for] making a report of sexual harassment.

7. Defendant shall post its sexual harassment policy, including the direct phone number of the designated corporate representative pursuant to Paragraph 4 above to receive reports of inappropriate activity, in break rooms, employee bathrooms, and other places accessible to employees and applicants for employment. It must specify that the designated individual accepts and investigates anonymous reports (reading ... "You do not need to give your name."). It must also specify that it will investigate any reports of retaliation.

8. Defendant will conduct exit interviews of all employees who resign or are terminated. This exit interview will be conducted by the Human Resources Manager, and will include the question, "Do you feel you were subjected to sexual harassment, or a sexually hostile work environment, during your employment with Mid–American Specialties? If yes, why?" Defendant will keep all exit interview documents on file for at least three years.

(Pl.'s Mem. 4–6.)

■ Mid–American objects to the EEOC's request for a toll-free hotline. It argues that a hotline is inappropriate because the unlawful conduct in this case consisted of "singular experiences." (Def.'s Resp. 9.) While the Court disagrees with Mid–American's characterization of the case,[2] it agrees that a toll-free hotline is inappropriate. A toll-free hotline might be warranted where an employer is so large that face-to-face reporting of harassment or retaliation would be cumbersome or impossible. No such obstacles to reporting harassment or retaliation exist at a small company like Mid–American. Accordingly, the EEOC's requests for subsections D and E of paragraph four, along with the references to the toll-free hotline in paragraphs five and seven, are DENIED.

The Court finds that the exit interview process described in paragraph eight is unnecessarily duplicative in light of the reporting procedures that will be adopted by Mid–American. Accordingly, the EEOC's request for paragraph eight is DENIED. The EEOC's remaining re-

---

**2.** The jury disagreed with Mid–American insofar as it awarded punitive damages. (*See* Punitive Damages Supplemental Jury Instruction No. 1) (D.E. 85) ("You, the Jury, also found that the [EEOC] had shown by clear and convincing evidence that Defendant's actions were intentional, reckless, or malicious ....").

quests for paragraphs four, five, six, and seven are GRANTED.

### d. Training (Paragraph Nine)

The EEOC seeks the following injunctive language:

9. Defendant [Mid–American] must conduct a two hour training session for all employees, including its managers[,] on the requirements of Title VII's prohibitions against sexual harassment and against retaliating against anyone who engages in protected activity. Defendant [Mid–American] will complete the training session within 60 days of the entry of this Judgment for Injunctive Relief. Defendant will also provide the training to all new employees and any employee promoted within 60 days of their hire or promotion at [Mid–American].

A. Defendant must provide EEOC with the written materials and outline of the training within seven days of the first training session, and every training session thereafter if any changes are made to the materials or outline.

B. At all training sessions, Defendant's Chief Executive Officer and President must attend the entire training in person and issue a statement to all employees affirming Defendant's commitment to a zero-tolerance policy concerning sexual harassment and retaliation in the workplace, stat[ing] that inappropriate conduct by an employee or manager may subject the company to liability, and that as a result, such employees may be subject to discipline and termination for participation in sexual harassment, and affirm[ing] that all employees have an obligation to report sexual harassment observed in the workplace.

C. Defendant will repeat the annual company-wide sexual harassment training described in Paragraph 9 for at least the next three years.

D. Within ten days of the completion of [all the] required training, Defendant will mail a copy of the signed attendance sheets to Kenneth Anderson, Trial Attorney, at the address below:

Attention: Kenneth Anderson, Trial Attorney

Equal Employment Opportunity Commission

1407 Union Avenue, Suite 901

Memphis, TN 38104

(Pl.'s Mem. 6–7.)

 Mid–American objects to the EEOC's request that Mid–American's CEO and president, Frank Kassela ("Kassela"), be required to attend all training sessions. Mid–American explains that Kassela lives in Las Vegas and travels to Memphis only periodically. (Def.'s Resp. 8 n. 2.) The Court notes that the EEOC presented a theory at trial that Kassela's lack of oversight negatively affected the work environment at Mid–American. Nevertheless, the Court sees no benefit in requiring Kassela to attend every training session that might occur. It is sufficient that Kassela attend only the annual company-wide sessions. At all other sessions, a videotaped statement or a letter from Kassela will suffice. Accordingly, the EEOC's request for paragraph nine, subsection B is DENIED. The EEOC's remaining requests in paragraph nine are GRANTED.

### e. Monitoring (Paragraph Ten)

The EEOC seeks the following injunctive language:

10. The EEOC has the right to monitor and review compliance with this Judgment for Injunctive Relief. Accordingly:

A. Every six months for the duration of this Judgment for Injunctive Relief,

and one month before the end of the final year of the Judgment for Injunctive Relief, Defendant must submit written proof via affidavit to the EEOC that it has complied with each of the requirements set forth above. Such proof must include, but need not be limited to, an affidavit by a person with knowledge establishing the completion of training; and an affidavit by a person with knowledge that the required posting was posted in the workplace and that the letter to employees was sent, together with a copy of Defendant's policies prohibiting sexual harassment and retaliation.

B. For the duration of the Injunction, Defendant must create and maintain such records as are necessary to demonstrate compliance with this Judgment for Injunctive Relief and 29 C.F.R. § 1602 *et seq.* and must verify that the reports submitted pursuant to this Judgment [for Injunctive Relief] are accurate. The EEOC has the right to: (1) attend training sessions required by this Judgment for Injunctive Relief; (2) review any and all documents relevant to the relief provided in this Judgment for Injunctive Relief; (3) interview employees, managers, supervisors and contractors; (4) inspect the premises of [Mid–American] solely for the purpose of verifying that the notice required by Paragraph 13 [*infra*] has been posted. The EEOC shall provide Defendant forty-eight (48) hours advance notice prior to undertaking any action pursuant to this Paragraph.

(Pl.'s Mem. 8.)

Mid–American offers no specific objections to the above paragraph. The Court finds that the language is sufficiently specific under Rule 65(d). Accordingly, the Court GRANTS the EEOC's request for paragraph ten.

### f. Record Keeping and Reporting Provisions (Paragraphs Eleven and Twelve)

The EEOC seeks the following injunctive language:

11. Defendant shall maintain records of any complaints made of sexual harassment for at least three years. These records shall include the names, addresses, telephone numbers, and [S]ocial [S]ecurity numbers of any employee or applicant making a complaint. These records shall also contain the date of the report or complaint, what was alleged, the names of any witnesses, the name and position of the alleged bad actor, and what actions, if any, Defendant took to resolve the complaint.

12. Defendant shall submit three annual reports to the [EEOC]. Defendant shall submit the first within 12 months of the entry of the Court's Final Judgment, the second within 24 months of entry, and the last within 36 months of entry. The reports will contain a summary of the information recorded by Defendant pursuant to Paragraphs 8, 9, 10, 11, 12 and 13 above; a record of attendance records from the annual harassment trainings required pursuant to Training section above (Paragraph 9), and a certification by Defendant that the Notice required to be posted by the Notice section (Paragraph 13 below) remained posted during the 12–month period preceding the report. Defendant shall mail these annual reports to Kenneth Anderson, Trial Attorney, at the address listed above in Paragraph 9 D.

(Pl.'s Mem. 9.)

Mid–American offers no specific objections to the above paragraphs. The Court finds that the language is sufficiently specific under Rule 65(d). Accordingly, the Court GRANTS the EEOC's requests for paragraphs eleven and twelve.

### g. Notice (Paragraph Thirteen)

The EEOC seeks the following injunctive language:

13. Within fourteen days after the entry of this Judgment for Injunctive Relief, Defendant must post at [Mid–American] a copy of the remedial notice attached hereto as Exhibit "B." The notice must remain posted for the duration of this Judgment for Injunctive Relief. Defendant shall continue to conspicuously post the Notice (poster) required by Title VII.

(Pl.'s Mem. 9–10.)

Mid–American offers no specific objections to the above paragraph. The Court finds that the language is sufficiently specific under Rule 65(d). Accordingly, the Court GRANTS the EEOC's request for paragraph thirteen.

### h. Notification of Successors (Paragraph Fourteen)

The EEOC seeks the following injunctive language:

14. This Judgment for Injunctive Relief is binding upon Defendant's purchasers, successors, and assigns. Before executing an agreement to sell, assign, consolidate or merge with the Defendant, Defendant must provide the entity entering into such agreement with notice of this Judgment for Injunctive Relief. Defendant must provide written notice to EEOC within thirty days, or if thirty days is not possible, then as soon as practicable, prior to any assignment, acquisition, merger, or consolidation affecting Defendant.

(Pl.'s Mem. 10.)

Mid–American offers no specific objections to the above paragraph. The Court finds that the language is sufficiently specific under Rule 65(d). Accordingly, the Court GRANTS the EEOC's request for paragraph fourteen.

### i. Term of Judgment for Injunctive Relief (Paragraph Fifteen)

The EEOC seeks the following injunctive language:

15. This Judgment for Injunctive Relief will remain in effect for three years from the date of entry.

(Pl.'s Mem. 10.)

■ Mid–American offers no specific objections to the above paragraph. The Court finds that the language is sufficiently specific under Rule 65(d). Moreover, three years is a reasonable duration. *See Spencer,* 894 F.2d at 660 ("[A] district court must … exercise its discretion in light of the prophylactic purposes of [Title VII] to ensure that discrimination does not recur."). The harassment at Mid–American began sometime in 2006. (*See* Dep. of Jennifer Looney (D.E. 32–6) 138 (discussing the September 2006 kiss from De-Wayne Gunn).) Mid–American did not adopt an anti-discrimination policy until April 2010. (Def.'s Resp. 4.) Accordingly, the Court GRANTS the EEOC's request for paragraph fifteen.

## IV. Conclusion

For the foregoing reasons, the EEOC's motion is GRANTED IN PART and DENIED IN PART. The EEOC shall file a revised proposed judgment for injunctive relief, modified according to the terms of this Order, by March 30, 2011.

### Exhibit A

[Mid–American Specialties Letterhead]

Dear [insert name of employee]:

This letter is being sent to you as a result of a court order in a lawsuit brought by the U.S. EQUAL EMPLOYMENT OP-

---

PORTUNITY COMMISSION (EEOC) against Mid–American Specialties in the United States District Court for the Western District of Tennessee, Civil Action No. 2:09–cv–02203.

On March 2, 2011, a jury in Memphis, Tennessee, found that Mid–American Specialties violated federal law by subjecting three former female employees to sexual harassment and retaliating against two of the former employees, because they complained about sexual harassment. The jury returned a verdict for $404,000 in compensatory damages and back pay and $1.1 million in punitive damages.

Federal law requires that there be no discrimination against any employee or applicant for employment because of an individual's sex or because the individual made a complaint of discrimination because of sex, race, national origin, color, age, disability, or religion with respect to hiring, compensation, promotion, discharge, or other terms, conditions or privileges of employment. Mid–American Specialties will not tolerate any such sexual harassment and retaliation and will take appropriate disciplinary action against any manager, supervisor or employee who engages in sexual harassment or retaliation.

I have enclosed a copy of Mid–American Specialties' policy prohibiting sexual harassment and retaliation.

Sincerely,

[signature of Mid–American Specialties CEO]

### Exhibit B

### *NOTICE*

1. This NOTICE to all employees of Mid–American Specialties, Inc. is being posted and provided as part of a Judgment ordered as the result of a jury verdict in a lawsuit brought by the U.S. Equal Employment Opportunity Commission (EEOC) against Mid–American Specialties, Inc. in the U.S. District Court for the Western District of Tennessee, Civil Action No. 2:09–cv–02203.

2. Federal law requires that there be no discrimination against any employee or applicant for employment because of sex, retaliation, race, national origin, color, age, disability, or religion with respect to hiring, compensation, promotion, discharge, or other terms, conditions or privileges of employment.

3. Mid–American Specialties, Inc. must comply with such federal law in all aspects, and it must not take any action against employees because they have exercised their rights under the law by filing charges or cooperating with the EEOC or by otherwise opposing employment practices made unlawful under federal law.

4. On March 2, 2011, the jury found that Mid–American Specialties, Inc. violated federal law by subjecting former employees to a hostile work environment based on their sex, and that Mid–American Specialties, Inc. retaliated against two of the employees for reporting unlawful sex discrimination. The jury awarded $404,000 in back pay and compensatory damages and $1,100,000 in punitive damages.

5. The EEOC maintains offices throughout the United States, and has a website, www.eeoc.gov, that will give you information about federal laws prohibiting employment discrimination and retaliation. EEOC's toll-free telephone number is 1–800–669–4000. You should feel free to contact EEOC if you have a complaint of discrimination, harassment or retaliation.

6. This NOTICE must remain posted until 3 years from date of entry of Judgment.